### THE JOSEPHINE B.

#### THE ARROW.

#### THE MAUD.

#### WOODBERRY et al. v. THE JOSEPHINE B. and THE ARROW.

#### McALLISTER v. THE ARROW and THE MAUD.

(Circuit Court of Appeals, Second Circuit. November 13, 1893.)

1. COLLISION—RULES OF NAVIGATION.
   A steam lighter, meeting a tug with a schooner in tow on a hawser 250 feet long, in Hell Gate, rounding Hallett's Point on a flood tide, has no right to presume, in the absence of a signal, that the tug will disobey the state statute which requires vessels to pass port to port, there being no controlling custom of navigation at that point in such cases authorizing a departure from the statute, and is in fault for attempting to pass starboard to starboard, without signals to that effect.

2. SAME—FAILURE OF TUG TO STOP OR SLOW.
   A tug towing a schooner through Hell Gate, with a flood tide, on a hawser 250 feet long, is not in fault in failing to stop or slow on meeting a steam lighter which fails to give any signal.

3. SAME—NEGLIGENCE OF TUG.

A tug will not be held in fault for taking a single schooner through Hell Gate on a hawser 250 feet long, in the absence of any special regulation on the subject, where the testimony of experts on the subject is conflicting.

Appeals from the District Court of the United States for the Southern District of New York.

In Admiralty. Libels for collision by Horace W. Woodberry and others, owners of the schooner Maud, against the steam lighter Josephine B. and the steam tug Arrow, and by James McAllister, owner of the Josephine B., against the Arrow and the Maud. The collision happened in Hell Gate, East river, in the afternoon of June 12, 1890, between the Maud, in tow of the Arrow on a hawser, bound east, and the Josephine B. bound west. Both boats were damaged, and each libeled the other and the tug Arrow. The decrees of the district court awarded full damages in the first-named suit in favor of the Maud against the Josephine B. and the Arrow, and in the last-named suit awarded half damages in favor of the Josephine B. against the Arrow, and dismissed the libel as to the Maud. Reversed, with instructions to enter decrees against the Josephine B. in both cases.

W. W. Goodrich, for the Maud.

J. A. Hyland, for the Josephine B.

A. B. Stewart, for the Arrow.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. When the master of the lighter first sighted the tug the former was just below Negro Point, and the latter had just come around Hallett's Point, both, as he says, near the center of the channel. The Northam, a large passenger steamboat, bound for New Haven, came around Hallett's Point immediately after the Arrow and Maud, and overtook them on their starboard side, keeping well over to the Long Island shore. The Josephine B. passed to the starboard side of the Arrow and the port side of the Northam, and had barely cleared the latter, when she came in collision with the Maud, which was towing on a hawser 250 feet long. According to the statement of the master of the Josephine B., the Northam was as close to the Long Island shore as she could get, and the distance between her course and that of the tug and tow was from 100 to 200 feet. He further testified that the width of the channel there was about 900 feet. The only faults charged in the several pleadings are these:

Against the Josephine B.: (1) That she attempted to pass the tow starboard to starboard, instead of port to port; (2) that she gave no proper signal in answer to the signal of the Arrow; (3) that she did not slow, stop, or back in time to avoid the collision or take some other steps to avoid the collision.

As to the Arrow: (4) That she did not slow, stop, or back in time to avoid the collision; (5) that she did not regard the fact that the Northam was overtaking her in a place where navigation

is difficult and dangerous; (6) that she went ahead before receiving a signal from the Josephine B.; (7) that she did not keep to the north, or Ward's Island, side of the river; (8) that she undertook to tow the schooner on a hawser about 300 feet long through Hell Gate.

As to the Maud: (9) That she did not keep proper lookout; (10) that she did not steer directly after the tug; (11) that she did not starboard her wheel before collision.

The fifth of these charges of fault was not discussed upon the argument, as the rule of the supervising inspectors upon which it was predicated was not in the record, nor apparently proved before the district court.

The neglect of appellants to present to this court the chart which was in evidence in the district court makes it impossible to determine as accurately as the district judge could the exact location of the collision, the position of the vessels when sighting each other, and their subsequent movements. All the important witnesses testified with this chart before them, carefully marking upon it courses and positions, which, as the record shows, were noted by letters or symbols. Without the chart, much of their testimony is unintelligible. The statements that the collision took place at the "point marked 'B,'" or that one or other of the vessels was at the time of sighting at the points marked "W" or "J," or what not, might as well be left out of the record altogether, if they are not accompanied with the map which alone identifies them.

It is beyond dispute, however, that the Josephine B., wholly unincumbered, was moving through a comparatively narrow channel, against a very strong tide, while the Arrow, with her tow, was moving in the opposite direction, through the same channel, with the tide. They were steamboats meeting each other on waters within the jurisdiction of the state of New York, and the rule of the road required "each boat so meeting to go towards that side of the river which is to the starboard or right side of such boat." Rev. St. N. Y. pt. 1, c. 20, tit. 10, § 1. This the Josephine B. did not do. Her master admits that when he first sighted the Arrow she was 1,200 feet off. At that time he was in no immediate danger. He admits that he knew the rule of the road, and took the responsibility of departing from it, and of directing his course towards the port side of the river. He further admits that he might have gone between the Arrow and the Ward's Island shore, if he had made up his mind to do so when he first sighted her. The rocks known as the "Hog's Back" interfered with navigation close to the Ward's Island shore, but he saw the Arrow before he got near the Hog's Back, and might, for all that appears, have kept on that side of the channel, stopping his engines, or running them sufficiently slow to hold his tug against the current, till the Arrow and her tow had passed him on the side the law required them to take. Indeed, the master of the Josephine B. admits that he could have stopped. His excuse for his maneuver is that he supposed the Arrow, having a tow on such a hawser, would go well over towards Hog's Back to prevent the strong tide that sweeps across the channel from that

point from carrying such a tow upon Steep or Scaly Rocks on the Long Island side. But he had no right to assume that the Arrow would thus disobey the statute, in the absence of some controlling custom of navigation at that point, or some notification by her that she was intending to depart from the rule of the road. We agree with the district judge that there is no such preponderance of evidence in the case as will establish a custom changing the general rule, and no notification to that effect was given by the Arrow; in fact the only signal given by the latter was a single blast, indicating a maneuver in conformity to the rule. The Josephine B. was therefore clearly in fault for not obeying the rule of the road, and passing port to port.

The Arrow, going with a tide of such strength, in a channel where there were rocks and cross eddies, was in no position to stop or slow,—a circumstance which disposes of the fault charged against her in the pleadings, and numbered 4 and 6, supra. Nor was she in fault for not keeping to the north, or Ward's Island, side of the river, since the statute required her to keep to the starboard side; and neither a controlling custom, nor the avoidance of immediate danger, nor any notification by the Josephine B. that she proposed to disregard the rule of the road, called for any such maneuver by the Arrow. As to the alleged fault, numbered 8, above, viz. the taking of her tow through Hell Gate on a hawser of such length, we should be inclined to hold her responsible. Such a method of navigation seems unwise; but not only is there evidence that it is quite common, when a tug has a single large schooner in tow, but some of the experts testify that such is the safer course, and that the other method would render control of the tug more precarious, while not increasing materially her control of the tow. We concur with the district judge in the conclusion that the conflict between the experts is so great that, in the absence of any special regulations on the subject, the party holding the affirmative of the question has not shown towing on a hawser to be a fault, by a fair preponderance of proof.

As to the Maud, we concur with the district judge in exonerating her. That she did sheer or sag somewhat to starboard is probable, but in such a tide this was unavoidable. It was not the proximate cause of the collision.

Decree reversed, and cause transmitted to the district court, with instructions to decree, in the first case, in favor of the Maud against the Josephine B. for full damages, and to dismiss the libel against the Arrow, with costs of both courts to the Maud against the Josephine B.; and, in the second case, to dismiss the libel of the Josephine B. against both Arrow and Maud, with costs of both courts to the Arrow.